[No. 16022. Department One. December 10, 1921.]

GROWERS & PRODUCERS COMPANY OF CALIFORNIA, *Appellant*, v. G. W. FISCHER, *Respondent*, JAS. F. MACDONALD et al., *Defendants*.[1]

PRINCIPAL AND AGENT (9, 36½, 42)—RELATION—AUTHORITY OF AGENT—RIGHTS AND LIABILITIES AS TO THIRD PERSONS—EVIDENCE—SUFFICIENCY. One not bound on the face of a written obligation cannot be chargeable with liability thereon in the absence of a showing that it was executed for and on his behalf by some person authorized by him to so execute it.

Appeal from a judgment of the superior court for King county, Hall, J., entered November 6, 1919, upon findings in favor of the defendant, in an action on a promissory note, tried to the court. Affirmed.

*Shank, Belt & Fairbrook,* for appellant.

*Bausman, Oldham, Bullitt & Eggerman* and *Walter L. Nossaman,* for respondent.

FULLERTON, J.—In this action the appellant, The Growers & Producers Company of California, seeks to recover from the respondent, G. W. Fischer, the sum of $48,960.70, with interest, alleging the same to be due upon a promissory note bearing the signature, as payor, of one James F. Macdonald. In the complaint as filed, G. W. Fischer, James F. Macdonald, L. F.

[1]Reported in 202 Pac. 252.

Macdonald, A. R. Udall and Charles G. Heifner are named as defendants and charged with liability, but the respondent was alone served with process and he alone defended. After issue joined, the action was tried by the court sitting without a jury, and resulted in a judgment in favor of the respondent.

To an understanding of the controversy, it is necessary to detail the facts somewhat at length. The appellant is a real estate firm doing business in the city of San Francisco, California. In the summer of 1915, it procured an option to purchase, for the sum of $137,500, a tract of land, containing some five thousand acres, situated near Corning, in Tehama county, California, paying $5,000 for the option; the tract being commonly known as the Howell Ranch. At that time the company had in its employ James F. Macdonald and A. R. Udall as salesmen, Udall being also a stockholder in, and secretary of, the appellant corporation. These parties became acquainted with the land through their connection with the appellant, and conceived the idea of organizing a company for its purchase and of developing it into an orange grove. They first interested in the scheme L. F. Macdonald, who is a brother of James F. Macdonald. The Macdonalds and Udall are residents of California, and the Macdonalds are nephews of the respondent Fischer and of one F. T. Fischer, who are residents of Seattle, Washington. The Macdonalds believed that their uncles could be interested in the scheme, and Udall and L. F. Macdonald visited them at Seattle for that purpose. They made known to the respondent the terms on which the property could be purchased from the appellant, gave him a description of the property, and informed him of their belief that the land was suitable for orange culture, and so far interested him in it as

to induce him to visit the land. The respondent, however, then informed them that he thought it unwise to obligate themselves to purchase the property, but believed from their statements that it was of greater value than the price asked for it and that it could be sold for a greater price if it were brought to the attention of the proper parties. This was in the summer of 1915, and the respondent visited the property late in July of that year. On visiting the property he became confirmed in his belief, and on August 20 of the same year an option to purchase the land at a price of $175,000, expiring on April 10, 1916, was taken from the appellant. For this option $5,000 was paid. By an instrument in writing bearing the same date, executed by the respondent, G. W. Fischer, F. T. Fischer, James F. Macdonald, L. F. Macdonald and A. R. Udall, the parties agreed to employ C. G. Heifner to visit the east and attempt to sell the property, agreeing, in case Heifner succeeded in selling the property, to divide the profits equally among themselves, and in case he failed so to do, to equally share the expenses and other losses caused thereby. In this instrument the parties described themselves as partners for the purchase of the Howell Ranch. James F. Macdonald was appointed as the representative of the others and authorized to enter into a contract with Heifner for the purposes mentioned. It was expressly provided that the contract should be for a limited expenditure and that each of the parties would contribute pro rata thereto. Subsequently a contract was entered into with Heifner, and he made an effort to find a purchaser for the land. In this Heifner did not succeed, it finally becoming known that the efforts would result in failure shortly prior to the time the option to purchase entered into with the appellant would expire.

On the failure of Heifner to sell the property, F. T. Fischer withdrew from the enterprise. The others, however, Heifner joining with them, conceived of a new scheme for its purchase. The scheme as formulated between the parties was in substance this: They agreed to form a corporation, of which they would become officers and trustees; that this corporation when formed should purchase the land from the owner on the terms of the option held by the appellant with the owner, and execute to the appellant its obligations for the difference between the option price payable to the owner and the option price payable to the appellant; that the corporation should enter into a contract with one Ames to plant a certain part of the land to orange trees and to maintain them until they reached a bearing age; that the part of the land so planted should be platted into acreage tracts and immediately put upon the market for sale; that from the sale of these tracts the deferred payments to the owners and the payment of the obligation to the appellant should be made.

On attempting to carry the understanding into execution, it was found that the formation of the contemplated corporation would take considerable time and that the exigencies of the situation could not await that event. There were payments agreed to be made to the owner of the property which were about to become due upon the appellant's contract with it, and Ames must begin his work at once if an entire year was not to be lost in starting the orange grove. Moreover, Ames refused to take the obligation of the corporation for his services unless it was guaranteed by the individuals. To meet these exigencies the parties agreed to advance for the purpose the sum of ten thousand dollars each; that title to the property should be taken in the name of James F. Macdonald, who should exe-

cute in his own name the necessary obligations to the owner and to the appellant to procure the legal title; that the formation of the corporation should be proceeded with, and when it was so formed, title to the property should be conveyed to it by Macdonald, whereupon it would assume the obligations; and that the parties would enter into an individual contract with Ames for the planting of the orange grove.

This plan was carried out. The advancements agreed upon were made by the parties; the land was purchased from the owner and a deed taken in the name of James F. Macdonald; Macdonald executed to the owner his obligations for the deferred payments, securing the same by a trust deed to the property, executing at the same time the obligation to the appellant which is the subject of this action, securing it likewise by a trust deed; the agreement with Ames was executed; the corporation was formed and the property conveyed to it by Macdonald; and the corporation assumed the obligations, both to the owner and the appellant, incurred by Macdonald. The enterprise, however, subsequently failed, and the land reverted to the owner in virtue of the conditions of the trust deed.

The principal controversy between the parties is over the question, for whom was Macdonald acting when he took, in his own name, a deed to the property, and in his own name executed the obligation sued upon. It is the appellant's contention that he was acting for and on behalf of himself and his associates; that he was the agent and trustee of his associates, authorized by them to take the deed and execute the necessary obligations on their behalf, and, in consequence, his promise is their promise. On the other hand, it is the respondent's contention that Macdonald

was acting for and on behalf of the corporation which they intended to form and which they subsequently did form.

Since the respondent did not sign the obligation sued upon, he is, of course, not bound upon the face of the instrument. If he is to be held at all, it is because of the nature of the transaction; because the obligation was executed for and on his behalf by his duly authorized agent. Aside from the evidence on the matters related, the evidence of the parties is flatly contradictory. On the one side it is testified that the scheme by which the property was purchased was entirely that of Macdonald and his associates, with which the appellant had nothing to do, acquiescing therein after it had been fully formulated; while on the other side it is testified that the agents and representatives of the appellants were present and participated in all of the conferences leading up to the purchase; that they fully understood the purposes of Macdonald and his associates not to bind themselves individually, and accepted the obligation on behalf of their principal with that understanding. Generally, it can be said that the evidence of each side supports the contention of that side, and were there no other circumstances, there might be difficulty in determining on which side the evidence preponderated.

But there are certain circumstances which seem to us to turn the scale in favor of the respondent. The first and foremost of these is the fact that the respondent did not either execute the obligation nor sign any writing authorizing Macdonald to execute the obligation for him. The matter was of considerable moment. To many the amount involved would appear a considerable fortune, and it is not shown that to the appellant it was an idle or inconsequential matter. If

the agreement was as the appellant contends, the natural and usual course of business would have been to express the agreement in writing and not let it rest in the uncertainties of parol. It is not a case of an agent dealing for an undisclosed principal. The principals were known, and not only known but personally present and taking part in the negotiations leading up to the transaction which resulted in the execution of the obligation. The men engaged in the transaction were not novices. On the contrary, they were all men of experience and had competent legal advice. Men unused to business transactions and unacquainted with the disagreements that usually arise over oral contracts, sometimes leave matters of moment to themselves to rest in parol; but this is not the rule with men used to business affairs, especially where the agreement is to pay money, and where they have in consultation a competent legal advisor. Indeed, among novices, contracts of this sort are usually in writing, and it is hard to suppose that, if the intent here was as now contended by the appellant, it would not have been expressed in writing. If it be true, as suggested in explanation, that the time was not then ripe for the execution of the instrument, that the parties lived at separate places some distances apart, and that it would have caused delay and inconvenience to send the instrument to each of them severally for signature when the time became so ripe, it does not explain why there was not then a written authorization given Macdonald to execute the instrument. This form of authorization would have been as effectual to bind the parties as would have been their signatures on the instrument itself, and no reason is suggested why such an instrument was not then executed. The failure to put the authorization in writing ap-

pears more strange also when it is remembered that, in the other instances where the parties agreed that one of their number might bind the others to an obligation, the agreement was expressed in writing. It was so in the first instance, where an endeavor was made to find a purchaser for the property through the agency of Heifner, and in the agreement with Ames the guaranty was signed by the parties individually, and not by Macdonald either in his own name as an individual, or in his name as the agent or trustee for the others.

Another circumstance is that the deed to the property was taken in the name of Macdonald as an individual. This is consistent with the idea that he was but a temporary custodian of the property, holding it for the purpose of conveying it to a corporation thereafter to be formed, but is inconsistent with the idea that he was a purchaser on his own behalf and on behalf of individuals competent and capable of receiving and holding title. Seemingly, if it were the understanding that they were purchasers obligated to pay the purchase price, the natural and obvious thing would have been to name them as grantees, so that their interests might be definitely known.

Still another circumstance is that the agreement was carried out in accordance with the respondent's version, and that in the corporation formed in pursuance thereof two of the officers of the appellant corporation became trustees. True, one of them asserts that his name was inserted in the corporate articles without his knowledge or consent, but it is of some significance that this officer afterwards joined with the respondent and his associates in the formation of a subsidiary corporation the purpose of which was to exploit and sell the tracts into which the orange grove planted upon the premises was subdivided.

The legal questions involved require no extended consideration. Since the respondent was not bound upon the face of the obligation, it must be shown, before he is charged, that it was executed for and on his behalf by some person authorized to so execute it. It is our opinion that the record does not justify this conclusion.

The judgment of the trial court will therefore stand affirmed.

PARKER, C. J., HOLCOMB, BRIDGES, and MACKINTOSH, JJ., concur.